IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    v.

MARLOW BATES,
    *Defendant.*

Criminal Action No. ELH-09-0183
ELH-13-0512

**MEMORANDUM OPINION**

Marlow Bates is a defendant in two federal cases: ELH-09-0183 ("*Bates I*") and ELH-13-0512 ("*Bates II*"). He filed a pro se "Motion for Compassionate Release/18 Months Home Confinement" in *Bates II*. *See* ECF 688. Thereafter, through counsel, Bates filed an "Emergency Consent Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)" in both *Bates I* (ECF 788) and *Bates II* (ECF 724).[1] The motions, which are identical, are supported by a supplemental memorandum of law (*Bates I*, ECF 790; *Bates II*, ECF 723) (collectively, the "Motion") and eight exhibits. *Bates 1*, ECF 790-1 to 790-8; *Bates II*, ECF 723-1 to ECF 723-8.

The government filed an opposition to Bates's pro se submission. *Bates II*, ECF 701. And, it submitted four exhibits. *Bates II*, ECF 701-1 to ECF 701-4. But, the Court has been advised that the government does not intend to supplement its original response.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

---

[1] Case ELH-09-0183 was originally assigned to Judge William D. Quarles, Jr., who has since retired. The case was reassigned to Chief Judge James K. Bredar in 2016, due to Judge Quarles's retirement. The case was reassigned to me in 2020, in light of the fact that *Bates II* is assigned to me, and so as to facilitate the resolution of Mr. Bates's motions for compassionate release. *Bates I*, ECF 786.

## I.   Background

### A.  *Bates I*: The 2009 Case

On April 8, 2009, a grand jury in the District of Maryland returned an indictment against numerous defendants, including Bates.  ECF 1.  Bates was charged with one count of conspiracy to distribute and possession with intent to distribution heroin, in violation of 21 U.S.C. § 846. *Bates I*, ECF 1.

Bates entered a plea of guilty to the charge on July 17, 2009 (*id.,* ECF 165), pursuant to a Plea Agreement.  *Id.*, ECF 166. The parties contemplated an adjusted base offense level of 19 pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  *Id.*, ¶ 6. The parties did not agree to a criminal history category.  *Id.* ¶ 7.

The Plea Agreement included a stipulation of facts.  *Id.* ¶ 6(a).  According to the stipulation, from 2008 until April 2009, Bates "conspired with a number of other individuals…to distribute and possess with intent to distribute heroin."  *Id.*  During an authorized wiretap, the investigators intercepted the defendant "discussing the smuggling of controlled substances into Maryland prison facilities."  *Id.*  Based on the intercepted calls, surveillance by law enforcement, and cooperating witnesses, Bates was "determined to be engaged in the distribution of narcotics on behalf of Eric Brown and the Black Guerilla family ('BGF') inside the Maryland Correctional System and in Baltimore City."  *Id.*  The parties also stipulated that "it was foreseeable to the Defendant that the Defendant, along with other members of the conspiracy, conspired to distribute more than 40 grams, but less than 60 grams of heroin."  *Id.*

According to the Presentence Investigation Report ("PSR", ECF 793)[2], Bates had a base offense level of 20 and a Criminal History Category of IV.  *Id.* ¶¶ 14, 36.  Two points were added because the offense involved the distribution of a controlled substance in a prison, pursuant to U.S.S.G. § 2D1.1(b)(3).  *Id.* ¶ 15.  After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the defendant had a final offense level of 19.  *Id.* ¶ 23.

The defendant's prior record included convictions for handgun possession and for drug possession with intent to distribute.  *Id.* ¶¶ 30, 31, 33.   He had a Criminal History Category of IV.  *Id.* ¶ 36.

Based on an offense level of 19 and a Criminal History Category of IV, Bates's Guidelines called for a period of incarceration ranging from 46 to 57 months.  *Id.* ¶ 56.

Sentencing was held on November 17, 2009.  *Id.*, ECF 31. At the time, the defendant was 23 years old.  *Id.*, ECF 793 at 1.  Judge Quarles imposed a term of 46 months' imprisonment and 36 months of supervised release.  *Id.*, ECF 204 (Judgment); ECF 205 (Statement of Reasons).

Defendant was released from prison on September 12, 2012, and entered onto supervised release.  *Bates II*, ECF 701-4 ("PSR"), ¶ 42.  However, he violated the terms of his supervised release because he committed the crime at issue in *Bates II*.  And, on May 5, 2015, Judge Quarles imposed a consecutive sentence of 6 months' imprisonment for Bates's violation of supervised release.  *Bates I*, ECF 645 (Judgment for Revocation); ECF 646 (Statement of Reasons).

---

[2] The PSR was not docketed at the time. However, I located a copy in the Chamber's file and had it docketed under seal.

**B.  *Bates II*: The 2013 Case**

On September 24, 2013, a grand jury in the District of Maryland issued a multi-defendant indictment.  In particular, Bates was charged with one count of conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846.  *Bates II*, ECF 1.

Bates entered a plea of guilty on August 8, 2014 (*id.*, ECF 313), pursuant to a Plea Agreement.  *Id.*, ECF 314.  The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of imprisonment ranging from 120 to 162 months of imprisonment. *Id.* ¶ 9.

The parties stipulated to a base offense level of 32 pursuant to the Guidelines, based on a quantity of heroin of at least one kilogram but less than three kilograms.  *Id.* ¶ 6(a).  But, the parties also contemplated a two-level reduction in the offense level based on what was then an impending change in the Guidelines under § 2D1.1.  *Id.* ¶ 6(d).

The Plea Agreement included a stipulation of facts.  *Id.* at 8-11.  The stipulation noted that the facts "do not encompass all of the evidence that would have been presented had this matter proceeded to trial."  *Id.* at 8.  According to the stipulation, from December 2011 until September 24, 2013, Bates was involved in a heroin trafficking organization. *Id.* During an authorized wiretap, investigators intercepted several phone calls during which the defendant discussed the sale of heroin.  *Id.* at 8-9.  In addition to the intercepted calls, a cooperating witness recorded conversations between Bates, a coconspirator, and the cooperating witness on multiple occasions.  *Id.* at 10.  On one occasion, Bates provided the coconspirator with $7,000 for heroin "and explained that he would have the rest for the co-conspirator the next day."  *Id.* at 10.  Bates admitted that "the amount of heroin reasonably foreseeable to [him] was at least one kilogram,

4

thus indicating that the amount of heroin was far in excess of the amount intended for personal use, and in fact would indicate an intention to distribute." *Id.* at 11.

According to the Presentence Investigation Report ("PSR," *Bates II*, ECF 701-4), Bates had a base offense level of 32 and a Criminal History Category of VI. *Id.*, ¶¶ 20, 49. Because defendant had two prior felony drug convictions, including the federal conviction in *Bates I*, he was deemed a Career Offender, pursuant to U.S.S.G. § 4B1.1 *Id.* ¶ 30. Therefore, defendant's offense level jumped to 37. *Id.* After deductions for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, the defendant had a final offense level of 34. *Id.* ¶ 32.

Based on an offense level of 34 and a Criminal History Category of VI, Bates's Guidelines called for a period of incarceration ranging from 262 to 327 months of imprisonment. *Id.* ¶ 72. The defendant was also subject to a mandatory minimum term of ten years' imprisonment under 21 U.S.C. § 841(b)(1)(A). *Id.* ¶ 71.

Sentencing was held on February 5, 2015. ECF 31. At the time, the defendant was 28 years old. ECF 701-4 at 1. Pursuant to the Plea Agreement, I imposed a term of 120 months' imprisonment. ECF 438 (Judgment); ECF 439 (Statement of Reasons). That sentence corresponded to the mandatory minimum term of ten years' imprisonment and the bottom of the C plea range (120 to 162 months). It was also well below the Guidelines.

As noted, Judge Quarles later sentenced Bates to a consecutive term of six months of incarceration for his violation of supervised release in *Bates I*. This resulted in a total sentence of 126 months of imprisonment. The sentence dated to September 26, 2013, when Bates was arrested. *Bates II*, ECF 701-4 at 1.

Bates filed a post-conviction petition with this Court under 28 U.S.C. § 2255. *Bates II*, ECF 596. By Memorandum and Order, I denied the petition. *Id.*, ECF 637; ECF 638.

Bates, who was born in 1986, is now 34 years of age. *Bates II*, ECF 701-1 (Inmate Data) at 1.  He is presently incarcerated at FCI Forrest City Medium.  *Id.*  He has served about 85 months of his 126-month sentence.  *Id.* at 5. This equates to about 67% of the sentence, exclusive of good time credits under 18 U.S.C. § 3624(b).  *Id.*  Accounting for good time credit, he has served about 75% of his sentence.  *Id.*  Defendant has a projected release date of October 27, 2021.  *Id.*  However, according to defendant, his projected release date has since changed from October 27, 2021 to September 30, 2021.  *Bates II*, ECF 723 at 2 n.1.  And, the Bureau of Prisons ("BOP") could release the defendant months earlier to a halfway house.  *Id.*

Bates's medical history includes hypertension and hyperlipidemia. *Bates II*, ECF 723 at 6.  In October 2012, defendant was involved in an automobile accident and injured his back. *Id.*, ECF 701-4, ¶ 89.  According to defendant, he had a "slipped disc" that required surgery and, prior to his incarceration, he received a series of cortisone injections in his back.  *Id.*  He also took various medications for his condition.  *Id.*  Since being incarcerated, defendant has also been diagnosed with keratoconus and is at risk of losing his eyesight as a result.  *Id.*, ECF 723 at 6; ECF 688-1 at 1.[3]  And, he suffered from an upper respiratory infection last December 2019. *Id.*, ECF 723 at 6; ECF 688-1 at 3.

Defendant initially filed an informal request for a reduction in sentence with his unit manager on June 24, 2020.  *Bates II*, ECF 723-1.  The request was denied on July 1, 2020, and Bates was told to make his request in accordance with BOP Program Statement 5050.50.  *Id.*, ECF 723 at 2-3.  He subsequently filed a written request with the Warden on July 6, 2020, requesting compassionate release based on his medical conditions and COVID-19.  *Id.*, ECF 723-2 at 1.  The Warden denied Bates's request on July 9, 2020, because he "did not attempt

---

[3] According to defendant, "Keratoconus is an eye disease that affects the structure of the cornea, resulting in loss of vision."  ECF 723 at 9.

informal resolution prior to submission of administrative remedy." *Id.* at 2.  In addition, on June 17, 2020, Bates's attorney filed a separate request with the Warden for compassionate release. *Bates II*, ECF 723-4.  The attorney did not receive a response.  *Id.*, ECF 723 at 3.

Additional facts are included, *infra*.

## II.    Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of

Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3)

the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

"When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." U.S.S.G. § 1B1.13(1)(A) provides for a sentence reduction based on "extraordinary and compelling reasons," and § 1B1.13(1)(B) provides for a reduction based on age, in combination with other requirements. U.S.S.G. § 1B1.13(2) establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The Application Notes permit compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)  **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic

lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)  suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D) is titled "**Other Reasons.**"  It permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205.  The Court may not rely on the Program Statement, however.  Rather, the Court must consider the Sentencing Commission's policy statements. *Taylor*, 820 F. App'x at 230.

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason

that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *Dillon*, 560 U.S. at 827.  But, compassionate release is a "rare" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at \*2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.   COVID-19[4]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at \*1 (D. Md. May 20, 2020).  That crisis is COVID-19.[5]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.  *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at \*1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."  *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at \*1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

That said, the Court must underscore that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Moreover, although many people who are

---

[4] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[5] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW  (last accessed June 15, 2020).

stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).  As of October 14, 2020, COVID-19 has infected more than 7.8 million Americans and caused over 215,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Oct. 14, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918.  *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration.").  The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393, (6th Cir. 2020).  Indeed, for a significant period of time, life as we have known it came to a halt. Although many schools and businesses have reopened, others are subject to substantial restrictions.   And, in view of the recent resurgence of the virus in some parts of the country, businesses and schools are again facing closure or restrictions.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available.  *Id.* (citation omitted).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type II diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an example of an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See Id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  Social distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*; *see also Cameron*, 2020 WL 2569868, at *1.  They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers.   Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their

spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at \*2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at \*8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."

*Hallinan*, 2020 WL 3105094, at \*9.   Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.   *Seth*, 2020 WL 2571168, at \*2.   Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.   *See* ECF 701 at 7-9 (detailing measures that BOP has implemented at BOP facilities).   Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, however, the virus persists in penal institutions.[6]   As of October 19, 2020, the BOP had 125,981 federal inmates and 36,000 staff.   Also as of October 19, 2020, the BOP reported that 1,698 inmates and 774 BOP staff currently tested positive for COVID-19; 14,611 inmates and 1,261 staff had recovered from the virus; and 127 inmates and two staff member have died from the virus.   And, the BOP has completed 65,320 COVID-19 tests.   *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 19, 2020).   *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

With respect to FCI Forrest City Medium, where the defendant is a prisoner, as of October 19, 2020, the BOP reported that 4 inmates and 15 staff have currently tested positive for COVID-19 and 103 inmates have recovered at the facility. And, the facility has completed 1060 tests.   *See* https://www.bop.gov/coronavirus/ (last accessed Oct. 19, 2020).

---

[6] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.   Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

## IV.   Discussion[7]

Bates moves for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.   ECF 723 at 6-14.  In particular, defendant suffers from hypertension and hyperlipidemia.  *Id.* at 6; ECF 688-1 (Medical Records) at 1.  He has also been diagnosed with keratoconus and is at risk of losing his eyesight as a result.  ECF 723 at 6; ECF 688-1 at 1.  And, he suffered from an upper respiratory infection last December 2019. ECF 723 at 6; ECF 688-1 at 3.  Moreover, Bates contends that the sentencing factors under 18 U.S.C. § 3553(a) counsel in favor of reducing his sentence to time served.  *Id.* at 14-17.

The government opposes Bates's Motion at each step of the analysis. The government first contends that Bates failed to exhaust administrative remedies.  ECF 701 at 9-10.   It also argues that Bates's medical conditions do not render him eligible for release.  *Id.* at 9-11.  And, in any event, the government maintains that Bates is still a danger to the community.  *Id.* at 5-6.

### A.  Exhaustion of Administrative Remedies

Defendant  initially  filed  a  "Documentation  of  Information  Resolution  Attempt," requesting reduction in sentence with his unit manager on June 24, 2020.  ECF 723-1.  The request was denied on July 1, 2020, and Bates was told to make his request in accordance with BOP Program Statement 5050.50.  ECF 723 at 2-3.  He subsequently made a written request for administrative remedy with the Warden on July 6, 2020, requesting compassionate release based on his medical conditions and COVID-19.  ECF 723-2 at 1.  The Warden denied Bates's request on July 9, 2020, because Bates "did not attempt informal resolution prior to submission of administrative remedy."  ECF 723-2 at 2.  In addition, on June 17, 2020, Bates's attorney filed a

---

[7] Because the filings for compassionate release are the same in *Bates I* and *Bates II*, I will refer to the documents in *Bates II*.

separate request with the Warden for compassionate release.  ECF 723-4.  The attorney did not receive a response.  ECF 723 at 3.

The government argues that Bates has not exhausted his administrative remedies because he "has made no request of the BOP for compassionate release."  ECF 701 at 4.  However, Bates has made at least two requests, pro se and through counsel, for compassionate release with the Warden.   ECF 723-2; ECF 723-4. Therefore, I am satisfied that Bates has exhausted his administrative remedies, as required by § 3582(c)(1)(A).

**B. Compassionate Release**

As to grounds for relief under § 3582(c)(1)(A)(i), the defendant asserts that his medical conditions qualify him for release.  He notes that "[t]here seems to be a special link between COVID-19 and hypertension" and cites a series of cases where courts have granted compassionate release to defendants with hypertension "even without co-occurring conditions." ECF 723 at 7-8; (citing, *inter alia*, *United States v. Carlos Cuevas*, Crim. No. GJH-16-0451 (D. Md. Aug. 3, 2020); *United States v. Salvago*, Crim. No. 5:02-CR-51 (LEK), 2020 WL 3410601 (N.D.N.Y. June 22, 2020)). Defendant also contends that he suffers from additional health concerns, "specifically hyperlipidemia, keratoconus and a history of prior upper respiratory infections" that make him uniquely susceptible to COVID-19.  ECF 723 at 9.

The government contends that defendant's medical conditions do not render him eligible for a sentence reduction.  ECF 701 at 11.   And, the government notes that the defendant's conditions are treated with medication, which "in some instances Bates stopped taking."  *Id.* at 11 n.8; *see also* 688-1 at 1.

To be sure, the coronavirus is not "tantamount to a 'get out of jail free' card."  *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).

However, numerous courts have found that, in light of the COVID-19 pandemic, hypertension, along with other conditions, qualifies as a compelling reason for compassionate release. *See, e.g., United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes, prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason). *See also, e.g., United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Ullings*, 1:10-CR-00406, 2020 WL 2394096, at *4 (N.D. Ga. May 12, 2020) (finding defendant's age, hypertension, and obesity constituted an extraordinary and compelling reason); *United States v. Foreman*, 3:19-CR-62 (VAB), 2020 WL 2315908, at *4 (D. Conn. May 11, 2020) (finding defendant's age, hypertension, and obesity satisfied an extraordinary and compelling reason). *But see United States v. Wright*, Nos. TDC-17-388, TDC-19-35, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (denying compassionate release to defendant with diabetes, hypertension, chronic kidney disease, asthma, and obesity); *United States v. Barringer*, PJM-13-0129, 2020 WL 2557035, at *4 (D. Md. May 19, 2020) (denying compassionate release to defendant with hypertension, diabetes, chronic kidney disease, and extreme obesity).

Given the current number of cases at FCI Forrest Medium, it cannot be disputed that the coronavirus has entered the prison. Therefore, I conclude that Bates has satisfied the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider whether the defendant poses a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A).  The government urges that conclusion, citing the seriousness of his offense in this case and defendant's prior convictions.  ECF 701 at 5-6.  According to the government, if defendant is released, he might continue to sell narcotics.  *Id.*

The defendant began using drugs when he was 14 years old.  ECF 701-4, ¶ 92.  While incarcerated for *Bates I*, he began the BOP's 500-hour Residential Drug Treatment Program, but he was placed in a half-way house before he could complete the program.  *Id.*

Bates acknowledges the seriousness of the crime at issue here.  ECF 723 at 14.  But, he argues that he "was not the leader or organizer but rather a cog in the distribution wheel…"  *Id.* And, the crime did not involve weapons or allegations of violence.  *Id.*  Further, he has spent the past seven years "in federal prison attempting to better himself" and has a plan to avoid future criminal entanglements upon his release.  *Id.* at 15-16.

Bates has about one year left of his sentence, assuming he receives his good conduct credits.  Nevertheless, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Bates's sentence to time served. These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent  Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Bates's prior record is particularly relevant in this analysis.  From ages 15 to 23, Bates amassed six convictions.  ECF 701-4 at 7-10.  To illustrate, defendant was convicted of

possession of a firearm in 2005. *Id.* ¶ 39. He was sentenced to three years for the offense, of which all but six months was suspended; he served about four months. *Id.*

Of particular relevance, in 2009, while defendant was still on probation for the handgun offense, he committed the federal offense at issue in *Bates I*. *Id.* ¶ 42. Defendant received a sentence of 46 months of incarceration, which was at the bottom of the Guidelines range, and he served about three years in prison. *Id.* Yet, this experience did not deter defendant from the commission of his second federal offense—the exact same offense for which he was convicted in 2009. Indeed, only one year after defendant completed his prior prison sentence, and while he was on supervised release, he committed the offense in this case. Clearly, the defendant was not deterred by the prior federal sentence.

The Court applauds Bates's rehabilitative efforts. ECF 723 at 15. But, the defendant's sentence was significantly below the Guidelines range, and at the bottom of the C plea range. Given the facts of the offense, coupled with the defendant's prior criminal history, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time. But, **nothing in the Memorandum Opinion is meant to dissuade the BOP from releasing Bates to home confinement, pursuant to 18 U.S.C. § 3642(c).**

### V.    Conclusion

For the forgoing reasons, I shall deny the Motion (*Bates I*, ECF 788; *Bates II*, ECF 724).

An Order follows, consistent with this Memorandum Opinion.

Date:   October 20, 2020                              _____/s/_____
                                                                        Ellen Lipton Hollander
                                                                        United States District Judge